

**IT IS ORDERED as set forth below:**

**Date: March 28, 2019**

_____

**Barbara Ellis-Monro**
**U.S. Bankruptcy Court Judge**

_____

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| IN RE: | |
| Gary Buford Harrell and Gloria Jean Harrell, | CASE NO. 18-53081-BEM |
| Debtors. | CHAPTER 7 |
| Renasant Bank f/k/a Merchants and Farmers Bank, | |
| Plaintiff, | |
| v. | ADVERSARY PROCEEDING NO. 18-5115-BEM |
| Gloria Jean Harrell, | |
| Defendant. | |

**ORDER GRANTING IN PART AND**
**DENYING IN PART PLAINTIFF'S MOTION FOR**
**SUMMARY JUDGMENT**

**I.      PROCEDURAL BACKGROUND**

This matter comes before the Court on Plaintiff Renasant Bank's Motion for Summary Judgment (the "Motion") [Doc. 7], filed November 20, 2018. In the Motion, Plaintiff seeks a determination that a debt owed to it by Defendant Gloria Jean Harrell is nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A) and (a)(6). This Court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(I). For the reasons set forth below, the Motion will be granted as to the § 523(a)(6) claim and denied as to the § 523(a)(2)(A) claim.

**II.     SUMMARY JUDGMENT STANDARD**

Summary judgment is governed by Fed. R. Bankr. P. 7056 and Fed. R. Civ. P. 56, which provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The substantive law applicable to the case determines which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).

The moving party has the burden of establishing its entitlement to summary judgment. *Clark v. Coats & Clark, Inc*., 929 F.2d 604, 608 (11th Cir. 1991). The moving party must identify the pleadings, discovery materials, or affidavits that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986). Once this burden is met, the nonmoving party cannot merely rely on allegations or denials in its own pleadings to defeat summary judgment. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2510 (citations omitted); *see* Fed. R. Civ. P. 56(c)(1).

In deciding a motion for summary judgment, the Court views the evidence and reasonable inferences in favor of the nonmoving party. *Gray v. Manklow (In re Optical Tech., Inc.)*, 246 F.3d 1332, 1334 (11th Cir. 2001). Material facts contained in the moving party's

2

statement of material facts that are not specifically controverted by the nonmoving party will be deemed admitted. BLR N.D. Ga. 7056-1(a)(2). In a dischargeability action, the objecting creditor must prove its case by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S. Ct. 654, 661 (1991).

### III. FACTS

#### A. The Statement of Material Facts

BLR ("Local Rule") 7056-1 provides, in relevant part:

> The respondent to a motion for summary judgment shall attach to the response a separate and concise statement of material facts, numbered separately, as to which the respondent contends a genuine issue exists to be tried. Response should be made to each of the movant's numbered material facts. All material facts contained in the moving party's statement that are not specifically controverted in respondent's statement shall be deemed admitted.

BLR 7056-1(a)(2). Plaintiff filed its Statement of Material Undisputed Facts (the "SMF") with the Motion. [Doc. 7-1]. Defendant has not filed a response to the SMF that complies with BLR 7056-1(a)(2). Accordingly, all material facts in the SMF are deemed admitted. They are reproduced below, along with allegations from the complaint that Defendant admitted in her answer.[1]

Defendant's debt obligations to Plaintiff arise from four separate lawsuits in Georgia and Florida that Plaintiff, by way of its predecessor in interest, Merchants & Farmers Bank, filed against Defendant and certain family members and associated companies. [Doc. 1 ¶ 5; Doc. 6 ¶ 5]. In total, those lawsuits sought to collect on a debt owed by Defendant as a result of certain unpaid loan obligations, together totaling more than $3 million. [Doc. 1 ¶ 6; Doc. 6 ¶ 5].

---

[1] Defendant admits that the Consent Order and Summary Judgment Order (collectively, the "Orders") are attached to the SMF. [Doc. 6 at 2 ¶ 7]. This Court further finds that the Orders can be presented in a form that would be admissible in evidence at trial. *See* Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056 (Fed. R. Civ. P. 56 applies in bankruptcy proceedings). Although Plaintiff requests that the Court take judicial notice of the Orders, this is not necessary. [SMF at 2 n. 2].

On February 4, 2011, Plaintiff filed suit against Defendant in Fulton County Superior Court, in an action entitled *Merchants & Farmers Bank v. Gloria Jean Harrell, Rhonda Lee Barney, Gloria Whitney Harrell a/k/a Whitney Harrell, Gloria's House of Hope, Inc., and Furniture Consignment Boutique Corporation*, Civil Action File No.: 2011CV196112 (the "Superior Court Case"). [SMF ¶ 1]. In the Superior Court Case, Plaintiff asserted claims of fraudulent transfer and fraudulent conveyance pursuant to O.C.G.A. §§ 18-2-74(a) and 18-2-75(a)-(b). [SMF ¶ 2]. The Superior Court Case was filed in the name of Plaintiff's predecessor-in-interest, Merchants & Farmers Bank. [SMF n.1]. During the pendency of the Superior Court Case, Merchants & Farmers Bank merged with Plaintiff.[2] [Id.].

On May 9, 2012, the Superior Court of Fulton County (the "Superior Court") entered an order granting Plaintiff's motion for summary judgment (the "Summary Judgment Order" or "SJO") in which it held that Defendant was liable to Plaintiff for certain fraudulent transfers (collectively, the "Transfers"), including the transfer of her residence to her daughters (the "House Transfer"), as well as cash transfers totaling over $500,000.00 to one of her daughters and certain entities held by family members. [SMF ¶ 3; Doc. 1 ¶ 9; Doc. 6 ¶ 7]. In the Summary Judgment Order, the Superior Court found that Defendant's transfer of the house and cash were fraudulent transfers as a matter of law under both O.C.G.A. § 18-2-74(a)(1), actual fraud, and O.C.G.A. § 18-2-75(a)[3], constructive fraud. [SMF ¶ 4; Doc. 1 ¶ 9; Doc. 6 ¶ 7]. Accordingly, the Superior Court found that Plaintiff was entitled to relief under Georgia's Uniform Fraudulent Transfer Act, O.C.G.A. § 18-2-70, *et seq.* [SMF ¶ 5; Doc. 1 ¶ 9; Doc. 6 ¶ 7].

---

[2] Exhibit A to Plaintiff's Motion consists of documentation of the merger of Merchants & Farmers Bank into Plaintiff. [Doc. 7-2].

[3] This section of the Georgia Code was listed as O.C.G.A. § 18-2-75(2) in the SMF, but the Court believes this was a scrivener's error. The relevant Georgia Code section, and the one cited in the Summary Judgment Order, is O.C.G.A. § 18-2-75(a). [*See, e.g.*, Doc. 1-2 at 2].

4

The Georgia Court of Appeals affirmed the Summary Judgment Order and the Georgia Supreme Court denied Defendant's petition for a writ of certiorari. [SMF ¶ 6; Doc. 1 ¶ 11, 12; Doc. 6 ¶ 7]. After Defendant exhausted her appeal options, the Superior Court set the case for a trial on damages. [Doc. 1 ¶ 13; Doc. 6 ¶ 7]. On December 10, 2013, Defendant and her co-defendants in the underlying case entered into a Consent Order and Final Judgment for Equitable Relief (the "Consent Order") by and through their counsel of record. [SMF ¶ 7].[4]

In the Consent Order, Defendant acknowledged and agreed that the Superior Court previously found that "the House Transfer and the Money Transfers were fraudulent as a matter of law under O.C.G.A. § 18-2-74(a)(1) in that they were completed with the actual intent to hinder, delay, and defraud." [SMF ¶ 8]. Defendant also acknowledged and agreed that "The [Superior Court] also found that the House Transfer and the Money Transfers were the result of willful and malicious conduct and resulted in injury to [Plaintiff]." [SMF ¶ 9]. In the Consent Order, the Court awarded Plaintiff a final monetary judgment against Defendant and her co-defendants in the underlying case, jointly and severally, in the amount of $1 million. [SMF ¶ 10].

On February 23, 2018, Defendant and her husband filed their voluntary petition for Chapter 7 bankruptcy. [SMF ¶ 11]. In her petition, Defendant stated that she was seeking to avoid Plaintiff's judgment lien pursuant to 11 U.S.C. § 522(f).[5] [SMF ¶ 12; Case No. 18-53081, Doc. 1 at 54]. On May 29, 2018, Plaintiff filed its Complaint Objecting to Dischargeability of Debt Pursuant to 11 U.S.C. § 523. [Doc. 1].

---

[4] Plaintiff attached documents from the Superior Court Case to its Motion, including the original complaint, the Summary Judgment Order, the appellate orders, and the Consent Order. [Doc. 7-3, 7-4, 7-5, 7-6].

[5] Defendant and her husband received a discharge on June 6, 2018, and their bankruptcy case was closed on October 23, 2018. The docket in the bankruptcy case does not reflect any motions to avoid lien pursuant to 11 U.S.C. § 522(f) filed against Plaintiff or any other entity. [*See* Case No. 18-53081].

5

## IV. ANALYSIS

### A. Collateral Estoppel

Plaintiff contends it is entitled to summary judgment based on collateral estoppel. "Collateral estoppel principles apply to dischargeability proceedings." *St. Laurent v. Ambrose (In re St. Laurent)*, 991 F.2d 672, 675 (11th Cir. 1993) (citing *Grogan v. Garner*, 498 U.S. 279, 285 n.11, 111 S. Ct. 654, 658 n.11 (1991)). "If the prior judgment was rendered by a state court, then the collateral estoppel law of that state must be applied to determine the judgment's preclusive effect." *Id.* at 675-76. *See also Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S. Ct. 892, 896 (1984) ("It is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.").

> The Supreme Court of Georgia has explained collateral estoppel as follows:
>
> Collateral estoppel precludes the re-adjudication of an issue that has previously been litigated and adjudicated on the merits in another action between the same parties or their privies. Collateral estoppel requires identity of the parties and their privies in both actions. However, collateral estoppel does not require precise identity of the claim—so long as an issue was determined in the previous action and there is identity of the parties or their privies, that issue may not be re-litigated, even as part of a different claim. Collateral estoppel not only precludes those issues that actually were litigated and decided in the previous action, it also precludes issues that necessarily had to be decided in order for the previous judgment to have been rendered.

*In re T.M.G.*, 275 Ga. 543, 544, 570 S.E.2d 327, 329 (2002) (footnotes omitted). Thus, to prevail under a theory of collateral estoppel on any of its claims, Plaintiff must establish identity of the parties or their privies, identity of the issues, and actual litigation and determination of the issues in the Superior Court Case.

6

Plaintiff has supplied two orders from the Superior Court: the Summary Judgment Order and the Consent Order. The Summary Judgment Order sets forth facts regarding the Defendant's transfer of her residence to her daughters, Defendant's transfer of $250,000 to Furniture Consignment, Defendant's transfer of $100,000 to her non-profit organization, and Defendant's transfer of $155,000 to her daughter.

At the time of all the Transfers, Plaintiff held claims totaling more than $3 million against Defendant, arising from a September 30, 3010 Florida court judgment on a promissory note in the amount of $472,702.85 and a separate promissory note in the original amount of $2,845,000. Plaintiff had begun making demands on the separate note around September 16, 2010. Also by September 2010, Defendant was insolvent and unable to pay her bills as they became due. [SJO at 2-3].

With respect to the residence, Defendant transferred the residence to her daughters by deed of gift dated November 5, 2010, for no exchange of money. [SJO at 3]. Defendant continued to reside at the residence, and the residence remained on Defendant's insurance policy after the Transfers. [SJO at 3]. As a result, the Superior Court found Plaintiff established five badges of fraud, including (1) the residence was transferred to insiders; (2) Defendant retained control or possession of the residence after the transfer; (3) prior to the transfer, Defendant had been sued or threatened with suit; (4) Defendant was insolvent at the time of the residence transfer or became insolvent shortly thereafter; and (5) the transfer occurred after Defendant incurred a substantial debt to Plaintiff. [SJO at 3-4]. As a result, the Superior Court concluded Defendant made the transfer with actual intent to hinder, delay, and defraud Plaintiff. [SJO at 4]. The Superior Court further concluded that due to Defendant's insolvency and the lack of reasonably equivalent value for the transfer, that the transfer was constructively fraudulent. [SJO at 4].

7

With respect to the $250,000, Defendant tendered a check in that amount, dated October 18, 2010, to Furniture Consignment. Furniture Consignment was incorporated by Defendant's daughter on October 8, 2010, less than 10 days after entry of the Florida judgment. Defendant retained control of the funds after the transfer and used them to pay debts unrelated to Furniture Consignment. The funds were deposited into three separate bank accounts that were closed within a few days, thereby concealing the details of to whom and when the money was paid. The transfer was made to prevent Plaintiff from garnishing the funds. [SJO at 5]. As a result, the Superior Court concluded the transfer was both actually and constructively fraudulent.

With respect to the $100,000, Defendant tendered that amount to her non-profit organization, an insider of Defendant, on December 10, 2010. At the time of the transfer, Defendant was the CEO, CFO, and secretary of the organization. Although Defendant designated the transfer as a "loan" on the check, the transfer was a gift to the organization, and no consideration was given for it. [SJO at 6-8]. The Superior Court concluded the transfer was both actually and constructively fraudulent.

With respect to the $155,000 transfer, Defendant tendered that amount to her daughter, an insider, on October 11, 2010. The transfer was a gift made for no consideration. The Superior Court concluded the transfer was both actually and constructively fraudulent. [SJO at 8-9].

The Consent Order recites the procedural history of the case but does not add any new findings of fact regarding the Transfers. However, Plaintiff primarily relies on the following language in the Consent Order in support of its collateral estoppel argument:

> As this Court previously found, the House Transfer and the Money Transfers were fraudulent as a matter of law under O.C.G.A. § 18-2-74(a)(1) in that they were completed with the <u>actual intent to hinder, delay, and defraud</u>. The Court also found that the House

8

>Transfer and the Money Transfers were the result of <u>willful and malicious</u> conduct and resulted in injury to [Plaintiff].

[Consent Order at 4 (emphasis in original)]. Because the Summary Judgment Order did not expressly make a finding of willful and malicious injury, these two sentences are conclusory statements and do not represent findings made by the Superior Court. While the Superior Court did determine that all the Transfers were made with actual fraudulent intent in violation of O.C.G.A. § 18-2-74(a)(1), there was no claim comparable to willful and malicious injury for which Defendant was held liable. Although the complaint included a count for punitive damages, no such damages were awarded either in the Summary Judgment Order or the Consent Order.

As to identity of parties, Defendant is a party to this proceeding and the Superior Court Case. Although Plaintiff's name has changed since the Superior Court Case, [*see* Doc. 7-2], Plaintiff has provided undisputed documentation demonstrating that it is the successor in interest to the plaintiff in the Superior Court Case. Furthermore, even if they were not the same, "[o]ne is in privity with another when they are represented at trial and are 'in law so connected with a party to the judgment as to have such an identity of interest that the party to the judgment represented the same legal right.'" *In re T.M.G.*, 275 Ga. at 570, S.E.2d at 329. The Court finds Plaintiff has met this standard and the identity of parties is established. The Court will address the remaining elements of collateral estoppel separately for each of Plaintiff's claims.

Although the claims in the Superior Court Case, actual and constructively fraudulent transfers, are not identical to the claims raised in the present action, nondischargeability pursuant to § 523(a)(2)(A) and (a)(6), "collateral estoppel does not require identity of the claim but only precludes readjudication of an issue already adjudicated between the parties or their privies in a prior action." *City of Demorest v. Roberts & Dunahoo Properties, LLC*, 288 Ga. App. 708, 713, 655 S.E.2d 617, 621 (2007).

9

O.C.G.A. § 18-2-74(a)(1) is Georgia's fraudulent transfer statute for transfers made with actual fraudulent intent. At the time the Summary Judgment Order was entered, it provided:

> A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor. . . .

O.C.G.A. § 18-2-74(a)(1) (2012). To determine "actual intent to hinder, delay, or defraud," O.C.G.A. § 18-2-74(b) requires the Court to consider a non-exhaustive list of factors known as "badges of fraud." O.C.G.A. § 18-2-74(b).

At the time the Summary Judgment Order was entered, Georgia's constructive fraud statute, O.C.G.A. § 18-2-75(a), provided:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

O.C.G.A. § 18-2-75 (2012). The Superior Court granted summary judgment under both of these statutes.

### B. Nondischargeability Under 11 U.S.C. § 523(a)(6) Is Established by Collateral Estoppel

Plaintiff seeks nondischargeability of its debt pursuant to 11 U.S.C. § 523(a)(6), which provides that debts "for willful and malicious injury by the debtor to another entity or to the property of another entity" are nondischargeable. 11 U.S.C. § 523(a)(6). The Supreme Court has held that § 523(a)(6) covers only "acts done with the actual intent to cause injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). "[A]lthough *Geiger* suggested a relationship between § 523(a)(6) and intentional torts, the *Geiger* standard is not necessarily satisfied by simply proving the elements of an intentional tort. 'Merely because a tort is classified as intentional does not mean

10

that any injury caused by the tortfeasor is willful.'" *Britt's Home Furnishing, Inc. v. Hollowell (In re Hollowell)*, 242 B.R. 541, 544 (Bankr. N.D. Ga. 1999) (quoting *Miller v. J.D. Abrams, Inc.*, 156 F.3d 598, 604 (5th Cir. 1998)).

Fraudulent transfer is an intentional tort in Georgia. *See U.S. Capital Funding VI, Ltd. v. Patterson Bankshares, Inc.,* 137 F. Supp. 3d 1340, 1381 (S.D. Ga. 2015) ("Plaintiff's Amended Complaint sufficiently alleges the occurrence of the underlying tort—[Defendants'] fraudulent transfer resulting in injury to Plaintiff.") Furthermore, willful and malicious injuries for the purposes of § 523(a)(6) may be "the result of fraud" that otherwise falls under § 523(a)(2). *Husky Int'l Elecs., Inc. v. Ritz*, 136 S. Ct. 1581, 1588 (2016). These injuries are distinct from the "fraudulent acts" covered by § 523(a)(2)(A), but a plaintiff may recover under either subsection for a fraud that results in willful and malicious injury. *Id*.

The Eleventh Circuit has "conclude[d] that a debtor is responsible for a 'willful' injury when he or she commits an intentional act the purpose of which is to cause injury or which is substantially certain to cause injury." *Hope v. Walker (In re Walker)*, 48 F.3d 1161, 1165 (11th Cir. 1995); *accord In re Kane*, 755 F.3d at 1295 (quoting *In re Jennings*, 670 F.3d 1329, 1334 (11th Cir. 2012)). To establish malice, Plaintiff must show that Defendant's actions were "'wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will.'" *In re Jennings*, 670 F.3d at 1334 (quoting *In re Walker*, 48 F.3d at 1164 (quoting *In re Ikner*, 883 F.2d 986, 991 (11th Cir. 1989))). Malice may be shown where a fraudulent transfer was made to "keep [assets] out of the hands of creditors," especially where a judgment has been obtained on a fraudulent transfer claim at the time the nondischargeability action is initiated. *Id.* at 1333. The depth of factual analysis required in such a case was set forth by the Eleventh Circuit in

*In re Jennings*. The Eleventh Circuit found the plaintiff established nondischargeabilty under § 523(a)(6) based on the following:

> Here, the evidence in the record showed that Janice transferred Shoreview willfully and with malice. She knew that the purpose of the transfer was to keep Shoreview out of the reach of creditors. She was acutely aware of Maxfield's personal injury claim, because she, Bruce, and their trust, RKB, were named as defendants in the suit just three months before the transfer. .... This evidence illustrates that Janice acted willfully in preventing Maxfield from reaching Shoreview to satisfy part of his personal injury judgment. And she had no just cause to effect the transfer: she knew Anna Leah had no claim to Shoreview, and she knew Bruce had no legitimate reason to transfer it to her. She effected the transfer without just cause, and therefore did so with malice.

*In re Jennings*, 670 F.3d at 1334.

In this case, the Superior Court made findings that the Transfers occurred shortly after Plaintiff obtained a judgment on one note and began making demands on a second note. The Transfers were either made when Defendant was insolvent or caused her to become insolvent. Each of the Transfers was made to insiders of Defendant for no monetary consideration. Defendant retained control of the property after it was transferred. Therefore, there was no just cause for the Transfers. With respect to the $100,000 transfer, the claim of consideration was false; Defendant's concealing of the true purpose of the transfer indicates willfulness. As to the $250,000 transfer, the Superior Court found Defendant made the transfer to prevent Plaintiff from garnishing the funds. As in *Jennings*, Defendant knew about Defendant's claims against her, she knew that transferring the property would place it beyond the reach of Defendant, and she had no just cause or reason to make the Transfers.

Accordingly, the findings in the Summary Judgment Order establish that the issue of willful and malicious injury has been litigated. Furthermore, Defendant was an active participant in the Superior Court Case and fully exhausted her appeal rights. Accordingly, Plaintiff has

established all the elements of collateral estoppel for its claim under § 523(a)(6). Based on the foregoing, the Court finds that Plaintiff is entitled to summary judgment on this claim.[6]

### C. **Nondischargeability Under 11 U.S.C. § 523(a)(2)(A) Is Not Established By Collateral Estoppel.**

Plaintiff has also alleged nondischargeability pursuant to 11 U.S.C. § 523(a)(2)(A), which provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt— . . .
>   (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>     (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

11 U.S.C. § 523(a)(2)(A); *see also* 124 Cong. Rec. H11,095–11,096 (daily ed. Sept. 28, 1978) (stating that §§ 523(a)(2)(A) and (a)(2)(B) were intended to be mutually exclusive). The Supreme Court has held that "actual fraud" in Section 523(a)(2)(A) "encompass[es] fraudulent conveyance schemes, even when those schemes do not involve a false representation." *Husky Int'l Elecs., Inc. v. Ritz*, 136 S. Ct. 1581, 1590 (2016). *Husky* "resolved a circuit split about whether a fraudulent conveyance could constitute 'actual fraud' under section 523(a)(2)(A), even where no false statements were made or relied upon when the debt was created." *Interamerican Asset Mgmt. Fund Ltd. v. Ortega (In re Ortega),* 573 B.R. 284, 294-95 (Bankr. S.D. Fla. 2017) (quoting *Husky*, 136 S. Ct. at 1586).

In *Cohen v. De La Cruz*, the Supreme Court held:

---

[6] Defendant argues her intent in her Response to Plaintiff's Motion for Summary Judgment, [Doc. 8], and that Plaintiff has collected significant amounts on its judgment, such that a determination of what is presently owed Plaintiff is necessary. This Court is required to give the final Orders entered by the Superior Court preclusive effect and cannot go behind the Orders to review the circumstances at the time they were entered. *See supra* at 6. Further, this Court is determining only that whatever amount is owed Plaintiff is excepted from discharge. This Court is not determining the current balance of the obligation. To the extent such a determination is necessary, that is a matter for the Superior Court to address.

13

> [T]he phrase "to the extent obtained by" in § 523(a)(2)(A) modifies "money, property, services, or ... credit"—not "any debt"—so that the exception encompasses "any debt ... for money, property, [etc.], to the extent [that the money, property, etc., is] obtained by" fraud. The phrase thereby makes clear that the share of money, property, etc., so obtained gives rise to a nondischargeable debt. Once it is established that specific money or property has been obtained by fraud, however, "any debt" arising therefrom is excepted from discharge.

523 U.S. at 213–14, 118 S. Ct. at 1214. In order to establish its entitlement to collateral estoppel on the § 523(a)(2)(A) claim, Plaintiff must show that the question of whether any money, property, services, or credit were obtained by fraud was necessary to the Superior Court's Summary Judgment Order.

In this case, the debt to Plaintiff arose under various promissory notes, and there are no facts in the record to indicate the notes were obtained by fraud on the part of Defendant. [*See, cf.* Doc. 8] ("There are no allegations as to misrepresentations made by Defendant in obtaining the original loan. The loan was based on actual finances at the time of origination and there are no allegations of misrepresentation by omission.") The fraud occurred after the fact when Defendant attempted to shield her assets from Plaintiff.

Judge Hagenau faced similar facts to those at bar in *RES-GA Diamond Meadows, LLC v. Robertson (In re Robertson)*, 576 B.R. 684 (Bankr. N.D. Ga. 2017). She noted that, although *Husky* does preserve the possibility that a fraudulent conveyance scheme could give rise to nondischargeability under § 523(a)(2)(A), in Texas, "an individual who directed a fraudulent conveyance by a corporation could be held personally liable to a creditor of the transferor through veil piercing" and that *that* debt would be nondischageable. *Id.* at 715. The facts of this case are less like *Husky* and more like *Robertson*, because "[Defendant] already owed the money personally and the alleged fraudulent transfer scheme occurred after the debt was incurred." *Id.* Accordingly, the Court cannot conclude that a prior proceeding determined that Defendant has a debt arising

14

from Plaintiff's fraudulent receipt of money, property, services or credit. Therefore, collateral estoppel does not apply, and Defendant is not entitled to summary judgment on this claim.

V.     **CONCLUSION**

Plaintiff has shown it is entitled to summary judgment on its claims for nondischargeability pursuant to 11 U.S.C. § 523(a)(6) based on collateral estoppel. Plaintiff failed to demonstrate that it is entitled to summary judgment on its claim under § 523(a)(2)(A). Accordingly, it is

ORDERED that Plaintiff's Motion [Doc. 7] is GRANTED as to its claim under 11 U.S.C. § 523(a)(6); it is further

ORDERED that Plaintiff's Motion [Doc. 7] is DENIED as to its claim under 11 U.S.C. § 523(a)(2)(A).

**END OF ORDER**

## **Distribution List**

Charles H. Van Horn
Berman Fink Van Horn, P.C.
3475 Piedmont Road, N.E., Suite 1100
Atlanta, GA 30305

Valerie Wulff Sherman
Sherman Law Group
1560 Warsaw Road, Suite 100
Roswell, GA 30076

Gloria Jean Harrell
50 Wills Drive
Alpharetta, GA 30009